IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORI REYNOLDS,<br><br>Plaintiff,<br><br>vs.<br><br>MICHELE J. ROMERO, in her individual capacity, et al.,<br><br>Defendants. | 4:25-CV-3197<br><br>MEMORANDUM AND ORDER |

This case is before the Court on several motions, mostly questioning the Court's jurisdiction over the plaintiff's claims and the propriety of pursuing those claims in federal court. The Court agrees with the defendants' arguments and will dismiss the plaintiff's complaint.

## I. BACKGROUND

The plaintiff, Lori Reynolds, alleges a number of federal and state-law claims arising out of state court child custody proceedings between 2021 and 2025 concerning her minor child. *See* filing 1. The defendants are

- Michele Romero, a Nebraska attorney who represented the father of the plaintiff's minor child;
- Leah Gleason, a Nebraska attorney who served as guardian ad litem for minor child;
- Jody Angel-Trejo, a mental health practitioner in Kearney, Nebraska appointed by the state court as family therapist for the minor child; and
- Dr. Steve Corsi, in his official capacity as CEO of the Nebraska Department of Health and Human Services (DHHS).

Filing 1 at 4-6.

The plaintiff's "Factual Allegations" (which also include argumentative assertions and legal conclusions) are sometimes difficult to understand. *See* filing 1 at 6-22. Generally described, the plaintiff alleges that Romero, Angel-Trejo, and Gleason conspired against the plaintiff and repeatedly made false statements and presented falsified evidence to the state court that the state court adopted. Filing 1 at 6-12; *see also* filing 2-6; filing 2-7; filing 2-8; filing 2-11. The plaintiff also claims that Trejo and Gleason committed separate financial misconduct relating to billing for services provided and payment of guardian ad litem fees, respectively. Filing 1 at 7, 9-13; *see also* filing 2-5. And DHHS allegedly "with[held] six of eight investigation" and dismissed a disciplinary complaint the plaintiff had lodged against Trejo. Filing 1 at 12-13; *see* filing 2-10. Much of this, the plaintiff alleges, is connected to her disability of "orthopedic and mental health conditions." *See*

The result of all that, according to the plaintiff, was that in 2022 the state court placed legal and primary physical custody of the minor child with the child's father. *See* filing 2-9. And in 2025, the state court adopted the father's proposed parenting plan and dismissed the plaintiff's motion to modify the preexisting custody arrangement. *See* filing 2-3.

The plaintiff alleges nine remaining claims for relief arising from those factual allegations:

I. Due Process and Equal Protection claims pursuant to 42 U.S.C. § 1983 against Romero, Gleason, and Angel-Trejo, premised on alleged ex parte communications, fabricated evidence, false testimony, and suppression of evidence.

II. Civil conspiracy claims pursuant to 42 U.S.C. § 1985(3) against Romero, Gleason, and Angel-Trejo, premised on the same allegations and allegedly motivated by animus toward the plaintiff's disability and "victim parent" status.

III. "Neglect to Prevent Conspiracy" claim pursuant to 42 U.S.C. § 1986 against Corsi, based on his alleged failure to investigate the plaintiff's claims.

IV. Violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act against Corsi for "withholding investigations and reports . . . denying equal access . . . ."

V. Defamation against Romero, Gleason, and Angel-Trejo premised on their alleged false statements.

VI. Fraud on the court against Romero, Gleason, and Angel-Trejo premised on alleged fabricated evidence, testimony, and concealed evidence.

VII. Intentional infliction of emotional distress against Romero, Gleason, and Angel-Trejo based on the allegations above.

VIII. Abuse of process against Romero premised on allegedly "manipulating debts [], misrepresented evidence, frivolous fillings [sic], improper discovery, coercion, and pursuing discharged debts . . . ."

Filing 1 at 14-17.[1] The plaintiff prays for declaratory relief against Romero, Gleason, and Angel-Trejo; injunctive relief and declaratory relief against Corsi

[1] The plaintiff asserted a few additional claims in her operative complaint but has voluntarily dismissed them. *See* filing 82.

and DHHS; compensatory damages from Romero, Gleason, and Angel-Trejo; and equitable relief " limited to setting aside specific [state court] fraudulent orders or actions causing independent injury to Plaintiff, without altering any state court determinations . . . ." Filing 1 at 17-18.

## II. STANDARD OF REVIEW

The defendants move to dismiss the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Filing 22; filing 37; filing 42; filing 70. A motion pursuant to Rule 12(b)(1) challenges whether the court has subject matter jurisdiction. Rule 12(b)(1) motions can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts. *Jessie v. Potter*, 516 F.3d 709, 712 (8th Cir. 2008).

A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack"' and a "factual attack." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). In a facial attack, the Court merely needs to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* Accordingly, the Court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)—that is, the Court accepts all factual allegations in the pleadings as true and views them in the light most favorable to the nonmoving party. *Id.*; *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008). In this case, the defendants have presented facial attacks, and the Court applies Rule 12(b)(6) standards.[2]

---

[2] Although the defendants have provided the Court with additional documents, they're all judicially noticeable and may be considered under Rule 12(b)(6). *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

## III. DISCUSSION

Before addressing the plaintiff's specific claims against specific defendants, it will be helpful to establish some of the jurisdictional and prudential rules pursuant to which many of those claims will be dismissed: *Ex parte Young*, *Younger* immunity, and the *Rooker-Feldman* doctrine.

1. JURISDICTIONAL AND PRUDENTIAL DOCTRINES

*(a) Ex parte Young*

An unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State. *Filyaw v. Corsi*, 150 F.4th 936, 941 (8th Cir. 2025), *cert. denied,* 223 L. Ed. 2d 556 (Jan. 20, 2026) (citing *Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022)). But the Supreme Court has also recognized sovereign immunity does not bar certain suits seeking declaratory and injunctive relief against state officers in their individual capacities based on ongoing violations of federal law. *Id*. The *Ex parte Young* doctrine rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, that official is not considered to be the State for sovereign-immunity purposes. *Id*.

The exception of *Ex parte Young* is narrow. *Id*. There are two requirements to meet the *Ex parte Young* exception: First, the plaintiff must allege an ongoing violation of federal law, and second, the plaintiff must be seeking prospective relief. *Id*.

(b) *Younger* Abstention

Generally, federal courts are obliged to decide cases within the scope of federal jurisdiction. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). But there are certain instances in which the prospect of unduly interfering with state proceedings counsels against federal relief. *Id*.

Abstention under *Younger v. Harris,* 401 U.S. 37 (1971) and its progeny may be appropriate where a state proceeding is ongoing or important state interests are at stake. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 602 (8th Cir. 1999); *Amerson v. Iowa*, 94 F.3d 510, 512 (8th Cir. 1996). In particular, *Younger* abstention is applicable where the state proceeding

qualifies as (1) a criminal prosecution, (2) a civil enforcement proceeding that is akin to a criminal prosecution, or (3) a proceeding implicating a state's interest in enforcing the orders and judgments of its courts. *Sprint Comm.*, 571 U.S. at 72-73; *Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018). But abstention is not in order simply because a pending state-court proceeding involves the same subject matter. *Sprint Comm.*, 571 U.S. at 72.

(c) *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)). *Rooker-Feldman* holds that pursuant to 28 U.S.C. § 1257, federal district courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017).

But § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (cleaned up).

2. THE PLAINTIFF'S CLAIMS

The plaintiff's claims against Corsi in his official capacity—essentially, claims against the State, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)—are analytically distinct from her claims against Romero, Gleason, and Angel-Trejo. Accordingly, the Court will deal with the claims against Corsi before separately addressing her other claims by theory of recovery, rather than by defendants.

(a) Claims against Corsi

Corsi argues that the claims against him are barred by sovereign immunity. Filing 23 at 5. The plaintiff relies on *Ex parte Young* as an exception to sovereign immunity. Filing 35 at 6-7.

As noted above, *Ex parte Young* permits suits against state officials seeking prospective injunctive relief. *Filyaw*, 150 F.4th at 945. The problem in this case is the "prospective" part: The plaintiff doesn't clearly articulate an ongoing violation of federal law, and the relief she seeks is remedial, not prospective. *See id*.

The plaintiff's allegations against DHHS are far from clear to begin with. She has attached a message she sent in March 2022 to what appears to be a DHHS email address for complaints, submitting a complaint about Angel-Trejo's alleged "unethical and unprofessional conduct." Filing 2-10 at 1. A DHHS investigator responded in April 2022, informing the plaintiff that DHHS had reviewed the complaint and decided not to conduct a licensure investigation. Filing 2-10 at 3. The plaintiff also attached an email from Romero regarding trial exhibits on which the plaintiff wrote "DHHS report - not in prior discovery *Denied access* to date," but she doesn't explain what that means or how it indicates wrongdoing by DHHS. Filing 2-11.

From that, the plaintiff concludes that DHHS violated the ADA and Rehabilitation Act by "withholding investigations and reports." Filing 1 at 15. Nothing in the complaint clearly makes that connection, either by articulating what DHHS withheld or how that withholding was premised on any alleged disability.[3] But more fundamentally, everything in the complaint is about what DHHS allegedly did in the past. There is no basis in the complaint to conclude that the plaintiff is "subject to or threatened with" recurrence of the same conduct. *See Filyaw*, 150 F.4th at 945. And the plaintiff's

> requested relief must be both prospective and equitable to qualify for the *Ex parte Young* exception to sovereign immunity. The requirement to show that the relief is prospective is closely related to the ongoing-violation requirement. This is because without an ongoing violation to curtail, there are no prospective injunctions for a federal court to issue. *Ex parte Young* does not permit judgments against state officers declaring that they violated federal law in the past.

*Id.*; *see also Smith v. Reynolds*, 139 F.4th 631, 635-36 (8th Cir. 2025). And that's precisely what the plaintiff is asking for here: Injunctive relief remedying alleged past wrongs, and "prospective relief" disconnected from any specific allegation of an ongoing violation of federal law.

---

[3] The plaintiff's proposed amended complaint, and her proposed supplement to that complaint, are far more specific on this issue. *See* filing 83-1 at 16-17; filing 88-1. But what the amended complaint is still missing is any basis to conclude that withholding investigative reports from the plaintiff is a violation of *federal* law. The plaintiff's conclusion that information was withheld from her on the basis of her alleged disability is purely speculative and unsupported by any factual allegations. *See* filing 83-1 at 16-17.

The plaintiff's claim falls outside the scope of *Ex parte Young*, and her claims against Corsi are barred by sovereign immunity.

(b) Section 1983 claims

The plaintiff claims that Romero, Gleason, and Angel-Trejo deprived her of her Due Process and Equal Protection rights under color of state law. These claims fail for a number of reasons.

*(i) Younger Abstention*

First, the plaintiff's state court custody case is ongoing, as a review of the appellate docket confirms that her appeal from the state court's decision is presently pending before the Nebraska Court of Appeals. As such, *Younger* abstention is relevant. *See Sprint Comm.*, 571 U.S. at 75 n.4 (finding that state-court controversy remained "live" where party intended to appeal state trial court's judgment).

As noted above, *Younger* is applicable where the state court proceeding implicates a state's interest in enforcing the orders and judgments of its courts. *Id*. at 72-73. And "there is no doubt that state-court proceedings regarding the welfare of children reflect an important state interest that is plainly within the scope of the doctrine." *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1249 (8th Cir. 2012). "Family relations are a traditional area of state concern, and federal courts should be unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation." *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 613-14 (8th Cir. 2018).

And here, the plaintiff's claims are inextricably intertwined with the state court proceedings. The gravamen of the plaintiff's allegations against Romero, Gleason, and Angel-Trejo is that they violated the plaintiff's rights by

conspiring *to affect the child custody proceedings*. The plaintiff's claims that evidence was falsified or withheld are precisely the sort of claims that can and should be heard in the courts that received that evidence. The plaintiff's efforts here are effectively a collateral attack on the record supporting the state court proceedings, and abstention is appropriate.

*(ii) Rooker-Feldman*

Not all, or even most, of the plaintiff's claims are barred by *Rooker-Feldman*. But threaded throughout the plaintiff's claims, including her § 1983 claims, is the allegation that she suffered monetary damages as a result of fees awarded to Romero and Gleason, and fees charged by Angel-Trejo. *See* filing 1 at 9-12. And at least some of those losses were occasioned directly by court orders awarding those costs. *See* filing 44-1; filing 40-6. Accordingly, to the extent that the plaintiff's alleged damages are premised on costs awarded by the state court, those claims are barred by *Rooker-Feldman*.

*(iii) Quasi-Judicial Immunity*

The plaintiff's claims against Gleason and Angel-Trejo are also barred by quasi-judicial immunity.

a. Guardian Ad Litem

Beginning with Gleason, the Eighth Circuit has repeatedly held that a guardian ad litem, acting within the scope of his or her role within the judicial process, is an integral part of the judicial process entitled to absolute immunity. *Arseneau v. Pudlowski*, 110 F.4th 1114, 1118 (8th Cir. 2024); *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005); *McCuen v. Polk Cty., Iowa*, 893 F.2d 172, 174 (8th Cir. 1990); *Myers v. Morris*, 810 F.2d 1437, 1466-67 (8th Cir. 1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478

(1991). Nonjudicial persons who fulfill quasi-judicial functions intimately related to the judicial process have absolute immunity for damage claims arising from their performance of the delegated functions. *Myers*, 810 F.2d at 1466-67. So, when a guardian ad litem is appointed to fulfill quasi-judicial responsibilities under court direction, they are accorded absolute immunity that protects them from having to litigate the manner in which they performed their delegated functions. *See id.* at 1467.

Nebraska state law is to the same effect: the Nebraska Supreme Court has held that "a guardian ad litem is entitled to absolute immunity from any suit for damages based upon the performance of duties which are within the scope of such guardian's authority." *Billups v. Scott*, 571 N.W.2d 603, 607 (Neb. 1997); *accord Anthony K. v. Nebraska Dep't of Health & Human Servs.*, 855 N.W.2d 788, 796 (Neb. 2014). The Court explained that an officer acting in a quasi-judicial capacity is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without willfulness, malice, or corruption. *Billups*, 571 N.W.2d at 605-06. Additionally, immunity is provided to officials acting in a ministerial capacity in obedience to a court process. *See id.* at 606. Accordingly, "a guardian ad litem has absolute immunity for actions that he or she takes as part of the judicial process." *Anthony K.*, 855 N.W.2d at 796.

The plaintiff claims that Gleason's alleged conduct exceeded the scope of her role as guardian ad litem. Filing 57 at 7-8. "But guardians ad litem are entitled to absolute immunity for acts that occurred within the course of their court-appointed duties, even if their conduct was wrongful and illegal. Absolute immunity would afford only illusory protection if it were lost the

moment a state officer acted improperly." Gleason is entitled to absolute quasi-judicial immunity here.

b. Court-Appointed Mental Health Practitioner

The same principles apply to Angel-Trejo, who was appointed by the Court to provide services during the custody proceedings. *See Arseneau*, 110 F.4th at 1118-19. She is entitled to absolute quasi-judicial immunity for the same reasons. *See id*.

(c) Section 1985(3) Conspiracy

Next, the plaintiff asserts a conspiracy to violate her civil rights, pursuant to § 1985(3). The same conclusions the Court already reached with respect to *Younger* abstention and quasi-judicial immunity apply with equal force here. But in addition, the plaintiff has failed to state a conspiracy claim.

To establish a conspiracy to violate a plaintiff's civil rights in breach of 42 U.S.C. § 1985(3), a plaintiff must prove: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right. *Stamm v. Cnty. of Cheyenne, Neb.*, 326 F. Supp. 3d 832, 860–61 (D. Neb. 2018) (citing *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999)). There must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. *Id*. at 861 (citing *Griffin v. Breckenridge*, 403 U.S. 88 (1971)). Speculation and conjecture are not enough to prove a conspiracy exists. *Id*. (citing *Mettler*, 165 F.3d at 1206).

The facts of the complaint are not sufficient to create an inference that any of the defendants were motivated to act because of the plaintiff's alleged

disability. *See id.* It can be difficult, where child custody is involved, to disentangle a parent's disability from the ways in which a parent's mental health may be relevant to the best interests of the child. *Cf.* Neb. Rev. Stat. § 43-292(5) (permitting termination of parental rights where parents are unable to discharge parental responsibilities because of mental illness). But the facts as alleged in the complaint do nothing to suggest that any attention paid to the plaintiff's alleged disabilities was premised on animus toward her on that basis. Even assuming that disability is a protected class for purposes of § 1985(3), the plaintiff hasn't connected her disability to the defendants' alleged actions beyond asserting that she is disabled and that the defendants acted against her. The plaintiff's allegations establish no discriminatory animus.

Furthermore, the plaintiff's allegations of a conspiracy are conclusory. The plaintiff must allege, with particularity, specific facts indicating a "meeting of the minds," meaning a mutual understanding among the alleged conspirators to take actions to an unconstitutional end. *Stamm*, 326 F. Supp. 3d at 861 (citing *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675 (8th Cir. 2012)). Here, none of the plaintiff's specific factual allegations point to or suggest a "meeting of the minds" amongst the Defendants, as opposed to discrete, individual alleged acts by them not done in concert, or the ordinary communications one might expect from persons involved in ongoing litigation.

For the foregoing reasons, the Court will dismiss the plaintiff's § 1985(3) claim.

(d) State Law Claims

The foregoing disposes of the plaintiff's federal claims, and her remaining claims arise under state law. The Court *may* continue to exercise supplemental jurisdiction over those claims. *See* 28 U.S.C. § 1367(a) and (c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). But the Court

can also decline. *See* § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Court has "broad discretion in determining whether to exercise supplemental jurisdiction[,]" *Crest Const. II, Inv. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011), and, in fact, where "resolution of the remaining claims depends solely on a determination of state law, the Court *should* decline to exercise jurisdiction." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (emphasis supplied) (quotation and citations omitted).

In making that determination, the Court must consider factors such as judicial economy, convenience, fairness, and comity. *Id.*; *see Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). But "[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims." *Wilson*, 821 F.3d at 971; *Williams v. Hobbs*, 658 F.3d 842, 853 (8th Cir. 2011) (quotation and citations omitted).

Here, the Court has already explained why abstention in favor of ongoing state court proceedings is appropriate. There is certainly nothing in this case to distinguish it from the usual case in which state courts should decide state issues—and, in fact, where the issues concern the conduct of state officials and persons involved in state court litigation, the state court *should* resolve them.[4] The Court will dismiss the plaintiff's state law claims without prejudice.

---

[4] The Court notes that under Nebraska law, any of the state law claims that were within the statute of limitations when brought in this Court may still be asserted in state court. *See* Neb. Rev. Stat. § 25-201.01.

### 3. MOTIONS FOR LEAVE TO AMEND

The plaintiff has also moved for leave to amend her complaint (filing 83) and to supplement her proposed amended complaint (filing 88). The Court should freely give leave to amend a pleading when justice so requires. Fed. R. Civ. P. 15(a)(2); *see Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016). But parties do not have an absolute right to amend their pleadings, even under this liberal standard. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008); *see Sorace v. United States*, 788 F.3d 758, 767 (8th Cir. 2015). And futility is a valid basis for denying leave to amend. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018), *cert. denied,* 139 S. Ct. 941 (2019). Specifically, futility means the Court has reached the legal conclusion that the amended pleading could not withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 589.

Here, the plaintiff's proposed amended complaint (filing 83-1), including her proposed supplement (filing 88-1) adds factual detail, subsequent events, and additional state law claims—but what it doesn't do is sufficiently cure any of the defects discussed above with respect to abstention, jurisdiction, immunity, or failure to state a claim. The Court will deny the plaintiff leave to amend her complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the plaintiff's complaint without prejudice.

IT IS ORDERED:

1. The plaintiff's Motion for Voluntary Dismissal of Certain Claims Pursuant to FRCP 41(a)(2) (filing 82) is granted.

2. Corsi's motion to dismiss (filing 22) is granted.

3. Gleason's motion to dismiss (filing 37) is granted.

4. Romero's motion to dismiss (filing 42) is granted.

5. Angel-Trejo's motion to dismiss (filing 70) is granted.

6. The plaintiff's motion for leave to amend her complaint (filing 83) is denied.

7. The plaintiff's motion for leave to supplement her complaint (filing 88) is denied.

8. The plaintiff's motions for preliminary injunctive relief (filing 3; filing 25) are denied as moot.

9. The plaintiff's complaint is dismissed without prejudice.

10. A separate judgment will be entered.

Dated this 30th day of September, 2026.

BY THE COURT:

John M. Gerrard
Senior United States District Judge